**Nelson DECKELBAUM Chapter 11 Trustee of the Estate of James L. Bohrer,**

v.

**COOTER, MANGOLD, TOMPERT & CHAPMAN, P.L.L.C., et al.**

**No. CIV.A. WMN–99–1586.**

United States District Court, D. Maryland.

Feb. 3, 2003.

Dale A. Cooter, Cooter, Mangold, Tompert and Wayson LLP, Washington, DC, Arnold M. Weiner, Weiner and Weltchek, Lutherville, MD, for defendants.

Jeffrey M. Schwaber, Stein, Sperling, Bennett De Jong Driscoll and Greenfeig PC, Rockville, MD, for plaintiff.

### MEMORANDUM

NICKERSON, Senior District Judge.

Presently before the Court is Defendants' Motion for Summary Judgment on Counts IV and V. Paper No. 51. The motion has been fully briefed. Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be granted.

### I. BACKGROUND

In this adversary proceeding, Plaintiff, the chapter 11 trustee, brought action against Defendant law firms to recover approximately $483,000 in legal fees paid to Defendants from Debtor funds. The path to these proceedings is long and tortuous and is summarized below.

On March 13, 1992, Debtor, Bohrer, filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. The Debtor continued to manage his property and conduct the business of his estate as debtor in possession, pursuant to 11 U.S.C.A. §§ 1007 and 1008, from the time of the filing to the time a trustee was appointed on April 11, 1997.

At the time the petition was filed, Debtor's primary asset was his 85% limited partnership interest and 5% general partnership interest in Sugarloaf Centre Limited Partnership ("SCLP"). SCLP's sole asset is a retail shopping center known as Sugarloaf Centre. The estimated value of Debtor's SCLP interest on the date of filing was $9 million. Debtor also had an option to purchase the remaining 10% limited partnership interest from his wife, Mrs. Bohrer, for a sum of $1,000.00. This option was exercisable at Debtor's sole discretion at any time prior to January 1, 2001.

In January, 1995, a group of creditors proposed a Creditors' Plan of Reorganization (the "Plan"). Under the Plan, all authority over Debtor's assets, including SCLP, would vest in the Plan Trustee. Debtor opposed the Plan.

During August and September, 1995, with the assistance of Defendants, the following events transpired:

1. The James L. Bohrer Irrevocable Trust (the "Trust") was created by Peter Veskel, a friend of the Debtor, with an initial deposit of $200.00. Debtor was

named as both trustee and sole beneficiary of the Trust.

2. Dunhill Management Company, Inc. ("Dunhill") was formed with Debtor as sole director and officer. All of Dunhill's stock was issued to the Trust.

3. SCLP and Dunhill entered into a Management Agreement (the "Agreement") giving Dunhill the right to manage Sugarloaf Centre until December 31, 2033. The Agreement further provided that Dunhill was to receive an annual commission equal to 10% of the Centre's gross rents.

4. HRB, LLC ("HRB") was created with Mrs. Bohrer as the sole shareholder and president and Debtor as vice-president.

On November 22, 1995, following the Bankruptcy Court's oral approval of the Creditors' Plan, and without notice to the creditors or court approval, these additional events occurred:

1. Debtor withdrew as general partner of SCLP.

2. Mrs. Bohrer revoked Debtor's option to purchase her 10% limited partnership interest in SCLP.

3. Mrs. Bohrer assigned her right to purchase a bankrupt partner's interest, i.e., Debtor's interest, in SCLP to HRB, which then exercised the right.

4. By unanimous consent, the partners elected to continue SCLP as a limited partnership.

5. Mrs. Bohrer's interest in SCLP was divided into a 5% limited partnership interest and a 5% general partnership interest, with the general partnership interest going to HRB.

Again, Defendants assisted in the execution of these transactions.

On January 27, 1997, the Bankruptcy Court appointed Deckelbaum as trustee. In so doing, the Court cited Debtor's "utter and complete disregard of his responsibility as a fiduciary," Transcript of April 4, 1997 Hearing at 2–98, as the basis for its decision.

On April 11, 1997, the Bankruptcy Court entered [1] a preliminary injunction granting the following relief to the Trustee on behalf of Debtor's estate:

1. Debtor's withdrawal as general partner declared a nullity.

2. Debtor's general partnership interest in SCLP assigned to the bankruptcy estate.

3. The Trust, HRB, and Dunhill ordered to turn over all assets to Trustee.

4. Management Agreement between SCLP and Dunhill nullified.

5. Debtor, HRB, and those acting in concert with them were prohibited from paying, or causing SCLP to pay, any further sums of money to the Debtor, to HRB, to BRH, LLC ("BRH"),[2] to the Trust, to Dunhill, to Mrs. Bohrer or to those acting in concert with them.

As a basis for the grant of the preliminary injunction, the Bankruptcy Court found that "the James L. Bohrer irrevocable trust, that Dunhill Management, Incor-

---

1. The preliminary injunction was affirmed by the District Court, see, Deckelbaum v. Bohrer, 1997 WL 908921 (D.Md. Sept.4, 1997), and the 4th Circuit Court of Appeals. See, In re Bohrer, 145 F.3d 1323, 1998 WL 228198 (4th Cir. May 8, 1998).

2. BRH was created by Debtor and Mrs. Bohrer in the time between when the Trustee filed the Injunction Motion and when the hearing on that Motion was held. BRH was used to purchase, for $112,000.00, a creditor's approximately $1 million judgment secured by the second judgment lien against Sugarloaf's assets.

porated, the BRH and HRB are all alter egos of the debtor, and that Mrs. Bohrer was his faithful aider and abetter."[3] Transcript of April 4, 1997 Hearing at 2–103. In addition, the Bankruptcy Court held that the course of conduct described "was orchestrated by the attorneys appearing here today on behalf of Mrs. Bohrer and related entities. There is no question that Mr. Bohrer is the real party in interest and indeed at one point during the course of the hearing, counsel objected to a certain communication Mr. Bohrer is said to have made with counsel on the grounds of privilege, forgetting for a minute whom they ostensibly represented." *Id.* at 2–101.

It is upon the basis of the above transactions that Plaintiff seeks a return of all legal fees paid to Defendant law firms between July 26, 1995, and February 24, 1997.

The complaint contains five counts: Count I for turnover of property of the bankruptcy estate under section 542; Count II for avoidance of unauthorized transfers under section 549; Count III for violation of the automatic stay under section 362; Count IV for fraud; and, Count V for conspiracy. Previously, this Court found 11 U.S.C. § 542 (Count I) and § 362 (Count II) inapplicable to the claims at hand. *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C.* (Memorandum and Order dated October 4, 2001) (Civil Action No. 99–1586). In that decision, this Court awarded Plaintiff summary judgment as to Count II for the post-June 14, 1996 fees.[4] *Id.* Defendants now move for summary judgment as to Counts IV and V and argue that no evidence exists to sustain those claims.

## II. LEGAL STANDARD

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For purposes of summary judgment, a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if, when applied to the substantive law, it affects the outcome of litigation. *Id.*

A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir.1987).

If the movant demonstrates there is no genuine issue of material fact and that she

---

3. The Bankruptcy Court believed Mrs. Bohrer's contention that she "knew nothing" and that she did whatever was necessary to "try to help to keep her husband in control." Transcript of April 4, 1997 Hearing at 2–102.

4. CMTC, PC was dissolved on June 14, 1996, whereupon Defendant law firm CMTC, P.L.L.C. was incorporated. In June 1997, the name of CMTC, P.L.L.C. was changed to Cooter, Mangold & Tompert, P.L.L.C., and in October, 1997, the name was changed again to Cooter, Mangold, Tompert & Wayson, P.L.L.C. (CMTW), also named as Defendant in this case. The parties dispute whether Defendants are successors in interest to CMTC, PC. Accordingly, this Court awarded the sum of eleven payments that were made to Defendant law firms after the dissolution of CMTC, PC, on June 14, 1996.

is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence which demonstrates that a triable issue of fact exists for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

## III. DISCUSSION

In Count IV, Plaintiff alleges that Defendants "defrauded the estate by causing SCLP and/or Dunhill to make the Monetary Transfers ... in full knowledge of the fact that SCLP and Dunhill were alter egos of the Debtor [and] that Dunhill had been created by the Debtor as part of a scheme to divert assets from the Debtor's bankruptcy estate ...." Complaint at ¶ 45. Under Maryland law, to establish fraud, a party must show either an affirmative misrepresentation of a material fact or an intentional concealment of a material fact. *Fox v. Kane–Miller Corp., et al.*, 542 F.2d 915, 918 (4th Cir.1976) (citing *Fegeas v. Sherrill*, 218 Md. 472, 476–77, 147 A.2d 223 (1958)). In its Opposition, Plaintiff argues that Defendants intentionally concealed "their actual representation of the debtor, and their active role in the Debtor's misconduct." Pl.'s Opp. at 4. To establish fraudulent concealment, a plaintiff must show: 1) that the defendant owed a duty to the plaintiff to disclose a material fact, 2) that the defendant failed to disclose that fact, 3) that the defendant intended to defraud or deceive the plaintiff, 4) that the plaintiff took action in justifiable reliance on the concealment, and 5) that the plaintiff suffered damages as a result of the defendant's concealment. *Green v. H & R Block*, 355 Md. 488, 525, 735 A.2d 1039 (1999); *Estate of White v. R.J. Reynolds Tobacco Co.*, 109 F.Supp.2d 424, 431 (D.Md.2000).

In its opposition, Plaintiff emphasizes its assertion that Defendants concealed the identity of their actual client, the Debtor. Defendants argue that there is no evidence that they ever believed that the Debtor was their true client. Def.'s Reply at 8. Three separate courts have examined the evidence in this case and have reached the conclusion that, based upon Debtor's manipulations of multiple corporate entities in 1995, Dunhill, HRB, BRH, and the revocable trust were all alter egos of the debtor. *See* Transcript of April 4, 1997 Bankruptcy Court Hearing; *Deckelbaum v. Bohrer*, 1997 WL 908921 (D.Md. Sept.4, 1997); *In re Bohrer*, 145 F.3d 1323, 1998 WL 228198 (4th Cir.1998). This Court has stated that "[t]he evidence suggests that Defendants knew perfectly well that they actually represented Debtor Bohrer, and not the corporate entities." *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C.*, 275 B.R. 737 (D.Md.2001).

While it may have produced enough evidence to support several of the elements, Plaintiff fails to address the other elements of fraudulent concealment. First, nowhere in its Complaint or Opposition, does Plaintiff argue that Defendants owed a duty of disclosure to Plaintiff. In *Estate of White*, the court granted the defendants' motion for summary judgment as to the fraudulent concealment claim because the plaintiff failed to demonstrate that he was owed a duty of disclosure by the defendant. *Id.* Second, Plaintiff's Complaint and Opposition are devoid of any factual allegations from which it could be inferred that the estate or Trustee took any action in reasonable reliance on Defendants' concealment. *See Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir.1987) ("Reasonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud, and such reliance must be pleaded with particularity."). Defendants are enti-

tled to summary judgment as to Count IV because Plaintiff "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

■ In Count V, Plaintiff alleges that "CMTC conspired with the Debtor, Mrs. Bohrer, HRB, BRH, the Trust, and Dunhill to defraud the estate ...." Complaint at ¶ 49. To establish civil conspiracy under Maryland law, Plaintiff must demonstrate a tortious injury (other than the conspiracy itself) to Plaintiff and " 'a meeting of the minds in an unlawful arrangement.' " *Christian v. Minnesota Min. & Mfg. Co.*, 126 F.Supp.2d 951, 959 (D.Md. 2001) (quoting *Electronics Store, Inc. v. Cellco Partnership*, 127 Md.App. 385, 732 A.2d 980, 992 (1999)). As discussed above, Plaintiff has failed to establish essential elements of the fraud claim. Because Maryland does not recognize civil conspiracy as a separate tort " 'capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff,' " summary judgment must be granted as to the conspiracy claim. *Christian*, 126 F.Supp.2d at 959 (quoting *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 189, 665 A.2d 1038 (1995)).

*IV.  CONCLUSION*

For the above stated reasons, the Court finds that the Defendant is entitled to summary judgment as to Counts IV and V. A separate order will issue.